WEIMER, Justice.[1]
I,We granted certiorari in this case to determine the appropriate remedy for a defendant when he is prohibited, in violation of La.C.Cr.P. art. 799.1, from using a peremptory challenge to back strike a provisionally selected juror. Agreeing with the court of appeal’s determination that the error is one which is subject to harmless error analysis, we nevertheless find the court of appeal misapplied the harmless error standard of review in this case. Because, after review, we cannot conclude with certainty that the guilty verdicts rendered in this ease were surely unattributable to the district court’s error in prohibiting the defendant from using a back strike to peremptorily challenge a provisionally selected juror, we reverse the decision of the court of appeal, vacate defendant’s convictions and sentences, and remand this matter to the district court for a new trial.
| ¡.FACTS AND PROCEDURAL BACKGROUND
On October 10, 2002, defendant, Billy R. Lewis, and a co-defendant, Ronald Anderson, were charged by grand jury indictment with two counts of first degree murder, in violation of La. R.S. 14:30. The charges stem from the July 24, 2002 shooting deaths of Travis Webb and his niece, Daveion Jones.
According to the facts developed at trial, two days prior to the shootings, Webb and defendant’s friend, Dominique Jones, were involved in a physical altercation after Webb confronted Ms. Jones about defendant coming into the neighborhood. On the evening of July 24, 2002, in an alleged act of retaliation, defendant and Ronald Anderson fired shots into Webb’s home, striking and killing Webb and Daveion and injuring another niece of Webb, Tierra Jones. Through a photo lineup, Tierra identified Anderson as one of the shooters. Before he died, Webb told his best friend, Ezekial Harris, and two investigating police officers that “Billy, Dominique’s friend” shot him and that he was able to identify his assailant because the door to the house was open.
Based on information gathered at the scene, police obtained an arrest warrant for defendant, who was ultimately apprehended on August 1, 2002. Ronald Anderson was also arrested and the two were jointly indicted for the murders of Webb and Daveion.[2]
On May 20, 2009, Ronald Anderson pled guilty to two counts of manslaughter as a so-called best interest plea, pursuant to North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162, (1970). Thereafter, on October 19, 2009, the state amended the bill of indictment to charge defendant Lewis with two counts of second *798 degree murder, in violation of La. |rR.S. 14:30.1. Lewis entered not guilty pleas to the amended charges and the case proceeded to trial.
During voir dire, after both sides had exercised their peremptory challenges to the members of the first panel of prospective jurors, defense counsel asked the district court to clarify whether prospective juror Rickey Steven Wolfe had been selected as a juror or challenged. The court informed counsel that Wolfe had been selected as a juror, to which counsel responded, “okay.” Noting that the first panel had produced six jurors, the district court then asked if either the prosecution or defense wished to exercise any back strikes at that time. Defense counsel responded, “[wje’d reserve.” Voir dire continued. At the conclusion of the fourth venire panel, defense counsel attempted to exercise a back strike on Wolfe, but the district court denied his request, advising that it only permitted back strikes on a “per panel” basis and was not required to permit defendant to exercise a back strike against a juror from the first panel. Defense counsel objected to the ruling, noting that the jurors had not been sworn and that if the court had allowed the back strike, he would have exercised it on Wolfe. Wolfe was ultimately seated and served on the jury.
On March 11, 2010, following the conclusion of trial, the jury found defendant guilty as charged on both counts of second degree murder. Thereafter, on March 25, 2010, defendant filed a motion for mistrial alleging the unconstitutionality of the non-unanimous jury verdict provisions of La. Const, art. I, § 17 and La.C.Cr.P. art. 782(A). The motion for mistrial was denied the same date, and defendant was sentenced by the district court to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence on each murder conviction. Defendant appealed.
|4The court of appeal affirmed defendant’s convictions and sentences. State v. Lewis, 2010-1775 (La.App. 4 Cir. 4/4/12), 96 So.3d 1165. In doing so, the court first declined to review defendant’s contention that the non-unanimous jury verdict provisions of La. Const. Art. I, § 17 and La. C.Cr.P. art. 782(A) violate the equal protection clause of the Fourteenth Amendment, finding that defendant’s failure to file a pre-verdict motion challenging the constitutionality of these provisions constituted a procedural default. In a similar vein, citing State v. Bertrand, 2008-2215, p. 6 (La.3/17/09), 6 So.3d 738, 742, the court found defendant’s assertion that non-unanimous jury verdicts violate his right to a jury trial under the Sixth and Fourteenth Amendments unavailing.
Having disposed of these preliminary arguments, the court of appeal then turned its attention to defendant’s assertion that the district court erred in refusing to allow him to back strike provisionally-accepted juror Rickey Steven Wolfe at the close of the fourth and final venire panel. Relying on the clear language of La.C.Cr.P. art. 799.1, which provides that “prior to the full complement of jurors being seated and before being sworn in by the court, ... the state or the defendant may exercise any remaining peremptory challenge to one or more of the jurors previously accepted,” the court of appeal found that the district court erred by refusing to allow the defendant to exercise his back strike against Wolfe. Nevertheless, because the defendant had an opportunity to strike Wolfe at the conclusion of the first voir dire panel, the court found that the error did not implicate defendant’s constitutional right to exercise peremptory challenges, merely his statutory right to back strike provisionally-accepted jurors. Citing State v. Tay *799 lor, 93-2201 (La.2/28/96), 669 So.2d 864, the court found the erroneous denial of this statutory right to be subject to harmless error analysis. Under that analysis, the court of appeal reasoned, the | ^defendant was required to demonstrate that the district court’s erroneous refusal to allow him to back strike Wolfe contributed to the verdict against him.
In assessing whether the defendant had satisfied that burden, the court of appeal analyzed Wolfe’s responses to voir dire and found them to be either neutral or defense-favorable, as evidenced by his professed mistrust of dying declaration testimony and tepid appreciation of the New Orleans Police Department. The court compared his responses to those of other members of the first panel and concluded that other jurors expressed a satisfaction level with police equal to or lower than that of Wolfe, but none was challenged by defendant. Nearly all panel members expressed a similar opinion about dying declarations. In addition, the court examined the mathematics of the jury verdicts — the jury voted 10-2 to convict on the first count and 11-1 to convict on the second count. The court reasoned that even assuming another juror sitting in Wolfe’s place would have returned not guilty verdicts on both counts, the back striking of Wolfe still would have resulted in a legal verdict of guilty and a life sentence on count two. The court concluded:
The defendant has not demonstrated any specific prejudice that inured to him because of the trial court’s erroneous ruling; notably, Wolfe shared pertinent attributes with other potential jurors whom the defendant did not strike. Moreover, the defendant has failed to show that another juror would have voted to acquit him in Wolfe’s absence. Even giving the defendant the full benefit of the doubt concerning Wolfe, the trial would have still ended in a guilty verdict and life sentence as to one count of the indictment. While it is arguable that the verdict on the other count could have resulted in a nine to three verdict, the defendant has not demonstrated a reasonable probability that this would have occurred.
Lewis, 2010-1775 at 15; 96 So.3d at 1175.
Judge Bonin authored a lengthy dissent, emphasizing the long-standing rule that when a district court erroneously denies the defendant a challenge for cause and the defendant must use a peremptory challenge to remove that juror (and thereafter | ^exhausts his peremptory challenges), a substantial right of the defendant has been violated, prejudice is presumed, and reversal is required. State v. Cross, 1993-1189, p. 6 (La.6/30/95), 658 So.2d 683, 686. The dissent argued the same presumption of prejudice should apply when a peremptory back strike is disallowed. As the dissent pointed out, the erroneous denial of a challenge for cause remains a reversible error even if the defendant is unable to show that he was forced to accept a juror he deemed unacceptable. Lewis, 2010-1775 at 3, 96 So.3d at 1177 (Bonin, J., dissenting), citing, State v. McIntyre, 365 So.2d 1348, 1351 (La.1978). Thus, the dissent reasoned, in circumstances in which there is only a possibility that an unacceptable juror has been seated, prejudice is presumed. The dissent explained the same presumption should apply when a peremptory back strike is erroneously denied because in this latter instance, an identified juror unacceptable to the defendant has actually been seated and has deliberated. Thus, the dissent posited, because the error in disallowing a peremptory back strike goes to the issue of how the jury is constituted, it should not be subject to harmless error analysis at all, but should be viewed as presumptively prejudicial to the defendant.
*800 Recognizing, however, that controlling precedent from this court suggests that a district court’s violation of a defendant’s right to peremptorily back strike a juror is subject to harmless error review, Taylor, supra, the dissent proceeded to challenge the majority’s conclusion that the error in this case was in fact harmless beyond a reasonable doubt and that the jury’s guilty verdicts were surely unattributable to the error-the test for harmless error announced in Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). First, the dissent attacked the majority’s conclusion that the error in this case was harmless because the defendant cannot show that juror Wolfe could have survived a challenge for cause, characterizing as “ironic” a rule which would require 17establishing cause for the exercise of a peremptory challenge. Next, the dissent discounted the majority’s reliance on the mathematical breakdown of the two guilty verdicts, finding that such an approach “completely ignores the effect that any one person may have on others,” and pointing out that it is impossible to know “how a different juror, acceptable to the defendant, may have interacted with the other jurors, nor can we know how this objected-to juror interacted with them.” Lewis, 2010-1775 at 6-7, 96 So.Sd at 1179 (Bonin, J., dissenting).[3] Finally, the dissent distinguished the present case from earlier decisions applying a harmless error analysis to the erroneous denial of a peremptory back strike, finding two significant differentiating factors: (1) the defendant here, unlike those in earlier cases, had no warning until the end of voir dire that the district court would not allow peremptory back strikes; and (2) the defendant identified the objected-to juror prior to the conclusion of voir dire (as opposed to waiting until an adverse verdict was rendered).
The defendant applied to this court for writs, arguing, consistent with Judge Bo-nin’s dissent, that the error in denying the peremptory back strike implicated his constitutional right to peremptory challenges and should be deemed presumptively prejudicial. In the alternative, defendant contends that the court of appeal misapplied the harmless error standard to affirm his convictions and sentences in the wake of the district court error.[4] We granted writs, primarily to consider whether the harmless |8error analysis applied in Taylor, supra, remains the appropriate remedy when a defendant is prohibited from using a peremptory challenge to back strike a provisionally selected juror in violation of La.C.Cr.P. art. 799.1. State v. Lewis, 2012-1021 (La.12/14/12), 104 So.3d 425.
*801 LAW AND ANALYSIS
As the court of appeal held, and the parties acknowledge, there is no question the district court erred in denying defendant permission to back strike provisionally-accepted juror Wolfe at the end of the fourth venire panel, before the court swore in the jury panel as a whole. Back striking, or the exercise of a peremptory challenge to strike a provisionally-accepted juror, is expressly authorized by La.C.Cr.P. art. 799.1, which provides:
Notwithstanding any other provision of law to the contrary, and specifically notwithstanding the provisions of Article 788, in the jury selection process, the state and the defendant may exercise all peremptory challenges available to each side, respectively, prior to the full complement of jurors being seated and before being sworn in by the court, and the state or the defendant may exercise any remaining peremptory challenge to one or more of the jurors previously accepted. No juror shall be sworn in until both parties agree on the jury composition or have exercised all challenges available to them, unless otherwise agreed to by the parties.
Louisiana C.Cr.P. art. 799.1 was enacted in the year 2006[5] to codify the holding of earlier jurisprudence from this court. See Taylor, 93-2201 at 22, 669 So.2d at 376-77; State v. Watts, 579 So.2d 931 (La.1991) (“A juror temporarily accepted and sworn in accordance with LSA C.Cr.P. Art. 788 may nevertheless be challenged peremptorily prior to the swearing of the jury panel in accordance with LSA C.Cr.P. Art. 790. LSA C.Cr.P. Art. 795(b)(1).”). The article explicitly condones a juror | ^election strategy in which counsel may defer a final decision on accepting one or more jurors until counsel has viewed the entire panel of provisionally selected jurors, before they are sworn in by the court. In this case, in rebuffing defendant’s attempt to peremptorily back strike Wolfe (provisionally selected as a juror from the first voir dire panel) at the end of the fourth panel, but before the jury panel was sworn in as a whole, the district court violated the plain language of La.C.Cr.P. art. 799.1 and committed legal error.
The issue presented for our resolution in this case is not whether defendant’s right to back strike a provisionally selected juror was violated, because it clearly was, but the appropriate remedy for such a violation. Relying on the majority opinion in the court of appeal and this court’s decision in Taylor, the state claims the defendant must show actual prejudice resulting from the error in order to receive a new trial. The defendant, drawing from Judge Bonin’s dissent, contends he is entitled to an automatic reversal of his convictions and sentences without a showing of prejudice because the effect of the loss of his peremptory challenge cannot be ascertained, making it impossible to demonstrate prejudice.
The peremptory challenge occupies an important role in the jury selection process. By enabling each side to exclude those jurors it perceives as harboring subtle biases with regard to the case which were not elicited on voir dire or which do not establish legal cause for a challenge, peremptory challenges are a means of “ ‘eliminating] extremes of partiality on both sides,’ ... thereby ‘assuring the selection of a qualified and unbiased jury.’ ” Holland v. Illinois, 493 U.S. 474, 484, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990), quoting Swain v. Alabama, 380 U.S. 202, 219, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) and Batson v. Kentucky, 476 U.S. 79, 91, 106 S.Ct. *802 1712, 90 L.Ed.2d 69 (1986). While peremptory challenges are one means of assuring the selection of a qualified and unbiased jury, the U.S. Supreme Court has determined | inthat an erroneous ruling denying a peremptory challenge is not, as a matter of federal constitutional law, a structural error requiring automatic reversal of a defendant’s conviction.[6] Rivera v. Illinois, 556 U.S. 148, 160-61, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009). Rather, state law determines the consequences when a peremptory challenge is erroneously denied. Id. at 161-62, 129 S.Ct. 1446. As the Court explained in Rivera, “[i]f a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to a state court’s good-faith error is not a matter of federal constitutional concern ... [but] a matter for the State to address under its own laws.” Id.
In Louisiana, the peremptory challenge is protected by and preserved in the constitution. La. Const. art. I, § 17 (“The accused shall have a right to full voir dire examination of prospective jurors and to challenge jurors peremptorily. The number of challenges shall be fixed by law”). While the exercise of a peremptory challenge is provided through legislation, La.C.Cr.P. arts. 795, 799, and 799.1, it is not merely a statutory right. Thus, this court has long recognized that when a defendant is forced to utilize a peremptory challenge to correct a district court’s error in denying a challenge for cause and thereafter exercises all available peremptory challenges on other prospective jurors, a substantial right of the defendant, guaranteed by the Louisiana constitution, is affected. State v. Monroe, 366 So.2d 1345, 1347 (La.1978). In such instances, prejudice is presumed. Id.; State v. Juniors, 2003-2425, p. 8 (La.6/29/05), 915 So.2d 291, 305. In this case, defendant argues the same result — automatic reversal— should obtain when a defendant is prohibited from using a peremptory challenge to back strike a provisionally selected juror.
This court has previously had occasion to address the remedy available to a defendant when a back strike is erroneously denied. In Taylor, we applied a harmless error analysis to conclude that, although the district court had erred in denying the defendant the right to exercise his remaining peremptory challenges immediately before the jury panel was sworn, the error was harmless. Taylor, 93-2201 at 26, 669 So.2d at 378.
Taylor presented this court with a unique set of facts. During the voir dire in Taylor, confusion arose over the manner in which peremptory challenges were to be exercised. Id., 93-2201 at 23, 669 So.2d at 376. After the first panel of prospective jurors was examined, the district court “ruled that it would not allow the pure ‘back strike’ system of peremptory challenges,” but would require both sides “to *803 exercise their peremptory challenges at the conclusion of the examination of each 12 member panel.” Id. To cure the initial confusion, the district court allowed the defendant the opportunity to back strike the two remaining prospective jurors from the first panel, and the defendant exercised one peremptory challenge at that time. Id., 93-2201 at 23, 669 So.2d at 377. Thereafter, jury selection proceeded with the clear understanding that both sides were required to exercise their peremptory challenges on a per-panel basis. When jury selection concluded, but before the panel was sworn, the defendant renewed his objection to the back strike ruling, noting that he wished to exercise his remaining peremptory challenges;[7] however, he did not identify any prospective juror he wished to back strike at that time. Id., 93-2201 at 24, 669 So.2d at 377. It was not until oral argument in this court that defendant identified the juror he would have peremptorily challenged. Id. While we found, on appeal, the district court ruling denying back strikes prior to the swearing of the entire jury panel erroneous, we nevertheless found the error susceptible to harmless error analysis, largely because the juror the defendant subsequently identified as the individual he would have challenged was a member of the last panel of prospective jurors and defendant had ample opportunity to challenge that juror, but elected not to do so. Id., 93-2201 at 25-26, 669 So.2d at 377-378. In other words, we found that, while the jurisprudential rule recognizing the right to exercise back strikes was violated, the constitutional right to peremptorily challenge a juror was not implicated under the particulariacts of the case.
Since our decision in Taylor, appellate courts have been consistent in applying its harmless error analysis to cases in which a defendant was denied the right to use back strikes, essentially reasoning that there is no constitutional right to backstrike, only a statutory one. See State v. Plaisance, 2000-1858, p. 31 (La.App. 4 Cir. 3/6/02), 811 So.2d 1172, 1194; State v. Crotwell, 2000-2551, p. 14 (La.App. 1 Cir. 11/9/01), 818 So.2d 34, 45; State v. Hailey, 2002-1738, p. 9 (La.App. 4 Cir. 9/17/03), 863 So.2d 564, 569; State v. Stukes, 2008-1217, p. 19 (La.App. 4 Cir. 9/9/09), 19 So.3d 1233, 1246-47.
However, Taylor, and the case on which it relied, Watts, were decided prior to the enactment of La.C.Cr.P. art. 799.1, through which the legislature has now given its express approval to the back strikr ing of provisionally-selected jurors at any time before the swearing of the entire jury panel.[8] The question which presents itself | ishere is whether the harmless-error analysis of Taylor remains appropriate when a district court, in clear violation of La. C.Cr.P. art. 799.1, entertains peremptory challenges to prospective jurors on a per-panel basis only.
As explained previously, in Louisiana, the peremptory challenge is a matter of constitutional as well as statutory right. La. Const, art. I, § 17. The question we must resolve is whether the constitutional right to peremptory challenges is implicated when the statutory right, bestowed by La.C.Cr.P. art. 799.1, to back strike a provisionally accepted juror is denied. In this *804 case, the court of appeal concluded “[t]he defendant’s state constitutional right to exercise peremptory challenges was not implicated, considering that the trial court offered him the opportunity to peremptorily strike juror Wolfe at the conclusion of voir dire of the first venire panel.” Lewis, 2010-1775 at 13, 96 So.3d at 1174. Thus, as in Taylor, the court of appeal found the district court’s refusal to allow the defendant to exercise back strikes did not prevent the defendant from peremptorily challenging any of the selected jurors during the jury selection process. We agree with the court of appeal’s analysis in this regard. Basically, what the defendant lost through the erroneous ruling of the district court was the opportunity to wait until the end of the jury selection process to use his peremptory challenges; a loss of tactical flexibility in the selection of the jury that is conferred by statute, not by the constitution. Given these circumstances, we find the harmless-error analysis employed in Taylor remains the appropriate standard for review of a district court ruling prohibiting a defendant from using a peremptory challenge to back strike a provisionally-selected juror in violation of La.C.Cr.P. art. 799.1.
114Our conclusion that the error in this case is subject to harmless error analysis does not end our inquiry, however. Defendant alternatively argues that, in affirming his convictions and sentences, the court of appeal misapplied the harmless error standard adopted in Taylor, essentially imposing upon a defendant an insurmountable burden.
In conducting its harmless error review in this case, the court of appeal ruled that it was defendant’s burden to “demonstrate that the trial court’s erroneous refusal to allow him to subsequently backstrike Wolfe contributed to the jury’s verdicts against him.” Lewis, 2010-1775 at 13, 96 So.3d at 1174. Because the defendant “failed to demonstrate that but for the trial court’s erroneous denial of his back-strike of juror Wolfe, there is a reasonable probability that the outcome of his trial could have been any different, and that the jury’s verdicts were unattributable to the error,” the court affirmed his convictions and sentences. Id., 2010-1775 at 16, 96 So.3d at 1175.
Defendant argues that under the reasoning adopted by the court of appeal, it is not sufficient that the record establish that he would have peremptorily challenged a specifically named juror; he must also affirmatively demonstrate the named juror was not impartial. Id., 2010-1775 at 14, 96 So.3d at 1175 (“Considering Wolfe’s response in voir dire, it does not appear that he warranted a defense challenge.”). However, defendant posits, if the juror he sought to remove was biased, then that juror would be removable for cause, rendering the issue regarding the peremptory challenge moot and the defendant without a remedy — an irony that did not escape the dissent. Id., 2010-1775 at 6, 96 So.3d at 1178-1179 (Bonin, J., dissenting) (“How ironic a ‘requirement’ that would require establishing ‘cause’ for a challenge in order to show that an error associated with a peremptory challenge is not harmless.”). In any event, |15adopting the dissent of Judge Bonin, defendant argues that given the essential nature of the peremptory challenge as one “exercised without a reason stated, without inquiry and without being subject to the court’s control” (Swain v. Alabama, 380 U.S. 202, 220, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965)),[9] in the *805 absence of a Fourteenth Amendment violation, it is inappropriate for a court “to substitute its judgment about the peremptory challenge of a juror” for that of a party and attempt to second-guess a party’s decision to exercise the challenge. Lewis, 10-1775 at 6, 96 So.3d at 1179 (Bonin, J., dissenting). Moreover, and most significantly, defendant points out, the harmless error analysis adopted by the court of appeal in this case places the burden on him to show a reasonable probability of a different result; ie., “that another juror would have voted to acquit him in Wolfe’s absence” (Id., 2010-1775 at 15, 96 So.3d at 1175), an impossible burden in any case.
We agree with defendant that the court of appeal misapplied Taylor’s harmless error standard in affirming his convictions and sentences. When this court addressed the question of harmless error in Taylor we referenced State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, 100, which adopts the harmless error test of Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Under that test, derived from Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), “[t]he inquiry ... is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.” Johnson, 94-1379 at 14, 664 So.2d at 100, quoting Sullivan, 508 U.S. at 279, 113 S.Ct. 2078. Moreover, under Chapman, it is clear that the burden of proving harmless error rests squarely on the shoulders of the party benefitting from the error. Chapman, 386 U.S. at 24, 87 S.Ct. 824 (“Certainly error ... casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment.”). Thus, in the present case, defendant did not, as the court of appeal held, have the impossible burden of showing a reasonable probability of an acquittal but for the denial of his peremptory challenge; rather, the state had the burden of showing that the jury’s verdicts were surely unattributable to the presence of juror Wolfe on the panel who, but for the district court’s violation of La. C.Cr.P. art. 799.1, would have been peremptorily challenged in favor of a different juror.
Our review of the record in this case convinces us that the state failed to meet its burden of proving the guilty verdicts in this trial were “surely unattributable” to the error of the district court in prohibiting defendant from using a peremptory challenge to back strike juror Wolfe. Several considerations prompt this conclusion. First, apart from the practical and legal[10] impossibility of following juror Wolfe into the jury deliberations to determine his effect, if any, on the resulting verdicts, the verdicts in this case were less than unanimous-10-2 on count one and 11-1 on count two-suggesting that the evidence, and the jury’s belief that the state had proved defendant’s culpability beyond a reasonable doubt, were not overwhelming.[11]
*806 117Second, this case is distinguishable from Taylor (wherein we concluded the district court error in not allowing back strikes was harmless) in two important respects. First, in Taylor, the defendant had a full opportunity to peremptorily challenge the objectionable juror. Not only was the defendant aware early in the voir dire that the district court would not permit back strikes, but the juror defendant identified as the individual he would have peremptorily challenged was in the last panel and nothing prevented the defendant from challenging that juror at the time. That situation differs significantly from the present one, in which the defendant was led to believe that he would be able to exercise a back strike against juror Wolfe by the district court’s apparent acquiescence to his statement, at the close of the first venire panel, that “[w]e’d reserve.” Second, and most significantly, in Taylor, the defendant did not identify the juror he would have challenged until oral argument before this court. See Taylor, 93-2201 at 25, 669 So.2d at 377. Here, the objectionable juror was identified to the district court before jury selection was concluded, thereby eliminating any potential abuse of the jury selection process by the defendant. See Hailey, 02-1738 at 8, 863 So.2d at 569 (“[T]he effect of not requiring a defendant to specify at trial who he would have backstruck is to permit a defendant to gamble upon receiving a favorable jury verdict, and then, upon the return of an unfavorable verdict, scour the voir dire transcript for jurors whom he can claim he would have backstruck.”).
In the final analysis, given the particular facts and circumstances of this case, we cannot conclude with certainty that the jury’s guilty verdicts were surely unattributable to the error of the district court in denying defendant the right to use a peremptory challenge to back strike juror Wolfe and, thus, that the error in prohibiting the back strike was harmless beyond a reasonable doubt.
|1SDECREE
For the foregoing reasons, we reverse the judgment of the court of appeal, vacate the convictions and sentences and remand this matter to the district court for a new trial.
REVERSED, VACATED AND REMANDED.
Judge JEFFERSON D. HUGHES III, was assigned as Justice pro tempore, sitting for KIMBALL, C.J., for oral argument. He sits as an elected Justice at the time this opinion is rendered.

. Judge Jefferson D. Hughes III, was assigned as Justice pro tempore, sitting for Kimball, C.J., for oral argument. He sits as an elected Justice at the time this opinion is rendered.

. According to the minute entries, the cases were severed on May 11, 2005.

. Acknowledging the work is fictional, the dissent nevertheless cited Twelve Angry Men (United Artists Metro-Goldwyn Mayer 1957), in which a single juror, through force of personality and perseverance, persuades his fellow jurors to change their votes from guilty to not guilty, as an example of the role a single juror can play in jury deliberations. Lewis, 2010-1775 at 7, 96 So.3d at 1179 n. 4 (Bonin, J., dissenting).

. In his writ application to this court and in brief, defendant additionally asserted that La. Const, art. I, § 17, authorizing non-unanimous jury verdicts, violates the Equal Protection clause of the Fourteenth Amendment because the provision's enactment "was motivated by an express and overt desire to discriminate against blacks on account of race,” and the Sixth and Fourteenth Amendment rights to a trial by jury. We pretermit consideration of these constitutional challenges because we find the case can be resolved on non-constitutional grounds. See Sims v. Mulhearn Funeral Home, Inc., 2007-0054, p. 6 (La.5/22/07), 956 So.2d 583, 588. ("[C]ourts should refrain from reaching or deciding the constitutionality of legislation unless, in the context of a particular case, the resolution of the constitutional issue is essential to the decision of the case or controversy.”).

. 2006 La. Acts 71, § 1.

. As explained in Arizona v. Fulminante, 499 U.S. 279, 310, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), “structural defects in the constitution of the trial mechanism ... defy analysis by ‘harmless-error’ standards ... [because they affect] the framework within which the trial proceeds, rather than simply [interject] an error in the trial process itself.” Such defects occur in only a limited number of cases, and include "the total deprivation of the right to counsel, lack of an impartial trial judge, unlawful exclusion of grand jurors of the defendant’s race, deprivation of the right to self-representation at trial, the right to a public trial, and erroneous reasonable doubt instructions.” State v. Langley, 2006-1041, p. 6 (La.5/22/07), 958 So.2d 1160, 1164, citing Johnson v. United States, 520 U.S. 461, 468-69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); Neder v. United States, 527 U.S. 1, 7-8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999); United States v. Stevens, 223 F.3d 239, 244 (3rd Cir.2000).

. The defendant had four remaining peremptory challenges.

. It appears some have been slow to recognize the enactment of La.C.Cr.P. art. 799.1. The transcripts in both the instant case and in State v. Patterson, 2012-2042 (La.3/19/13) 112 So.3d 806, 2013 WL 1115440 (released simultaneously with this opinion) suggest that neither the district courts nor counsel were aware of the existence of this article.

. The Court overruled Swain in part, for reasons not here applicable, in Batson, 476 U.S. at 100 n. 25, 106 S.Ct. 1712.

. In this regard, La. C.E. art. 606(B) prohibits a party from inquiring into "any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon [a particular juror’s] or another other juror’s mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith.”

. In making this observation, we do not mean to suggest the error in disallowing a *806 peremptory back strike can be reduced to a matter of simply determining whether the verdict was unanimous or split, effectively insulating a unanimous verdict from a finding of harmless error, because we recognize, as Judge Bonin points out in his dissent, that such an approach ignores the effect that any one person may have on others. Lewis, 2010-1775 at 6, 96 So.3d at 1179 (Bonin, J., dissenting). We simply point to the split verdicts in this case as one factor to consider in assessing whether the state satisfied its burden of proving the jury's verdicts were surely unattributable to the presence of juror Wolfe on the panel.