JAMES F. McKAY III, Chief Judge.
|, After a review of the record before this Court, we have ascertained two errors patent. As such, we affirm the defendant’s conviction as to Count 1, but vacate the defendant’s sentence and remand the matter for resentencing consistent with this opinion. As to Count 2, we reverse the defendant’s conviction and sentence.
STATEMENT OF THE CASE
On August 9, 2011, the State charged the defendant with one count of attempted armed robbery with a firearm (Count 1), a violation of La. R.S. 14:(27)64.3, and one count of discharging a firearm during the commission of a crime of violence (Count 2), La. R.S. 14: 94F.
On May 29, 2012, the jury found the defendant guilty of attempted armed robbery with a firearm and guilty of attempted illegal use of a weapon.
On May 31, 2012, the court called back two jurors for questioning concerning a line drawn through the words “during a violent crime” on the verdict sheet pertaining to Count 2. As a result of the questioning, the court determined that the correct verdict as to Count 2 was guilty of attempted illegal use of a weapon during a violent crime.
|2On August 16, 2012, the court sentenced the defendant to eighteen years without parole, probation or suspension of sentence on the conviction for attempted armed robbery with a firearm and to five years without parole, probation or suspension of sentence for attempted illegal use of a firearm during a crime of violence, ordering that the sentences be served concurrently. That same day, the defense orally noticed its intent to appeal.
STATEMENT OF FACT
New Orleans Police Department Detective Kelly Morel responded to a shooting in the 2500 block of St. Ann Street on May 27, 2011. She arrived on the scene just before 7:00 p.m. to find Officer Liz Garcia speaking with the victim, who had not been injured. The victim identified his assailant as Dominique, a fellow student at Clark High School. The victim told the officers that Dominique wore a white T-shirt, cargo pants, white Nike socks and gray Converse low-top tennis shoes. Detective Morel learned that Dominique attempted to take the victim’s cell phone and fired a gun at him. Detective Morel related the information she obtained from the victim to the lead investigator.
Detective Matthew McQueen was the lead detective on this case, which he determined involved attempted armed robbery and illegal discharge of a weapon. On May 31, 2011, Detective McQueen did a verbal follow-up investigation with the victim and learned that the defendant, Dominique Carter, played on the Clark High School football team. With this information, Detective McQueen obtained a photograph of Dominique Carter, and he compiled a six-person photo lineup from which the victim positively identified the defendant as his assailant. The victim signed and dated the back of the defendant’s photograph. After the victim viewed the six-photo lineup, Detective McQueen displayed a single picture of the |3defendant to the victim. Again, the victim identified the defendant as the assailant. Detective *157 McQueen secured an arrest warrant for the defendant for attempted armed robbery.
The victim testified that he was nineteen years old and currently a senior at Renew Accelerated High School. Prior to attending Renew, he was a student at Clark High School along with the defendant. The victim said that in May 2011 he had an Evo cell phone, which his mother gave him.
The victim related that on the afternoon of May 27, 2011, he left his home on Salce-do Street to return a shirt to Urban Outfitters. He walked on Orleans Avenue speaking on his cell phone. As he approached Broad Street, he noticed the defendant and two of the defendant’s friends walking toward him. They passed one another; however, the defendant and his friends turned around, and they began to follow the victim. When the victim crossed the street, the defendant and his friends crossed the street and continued to follow. As the victim turned onto Roche-blave Street, the defendant caught up to him and demanded the victim’s cell phone. The victim refused to surrender his phone and picked up a brick for protection. As he did so, the defendant drew a gun and pointed it in the victim’s face. The victim continued walking toward an area where he heard people talking. He walked toward the voices and realized that one of the people talking on a porch on St. Ann Street was his mother’s friend, Ms. Danky Buckner, and members of her family. The defendant asked the victim if he was going to call for help. The victim walked on. When the victim was about ten feet ahead of the defendant, the defendant shot at him and ran away. The victim ran into a nearby house. The police were called, and the victim gave them all the information concerning the | defendant’s clothing and how he knew the defendant. Subsequently, the police video recorded him identifying the defendant from the photo lineup.
Ms. Jeannetta Scott, the victim’s mother, testified that on the afternoon of May 27, 2011, the victim called and told her that a group of boys attempted to rob him of his cell phone at gunpoint. Ms. Scott confirmed that at that time, the victim had a new I-phone, which he purchased with money she gave him. Ms. Scott identified the victim’s phone at trial.
Ms. Denise Buckner lived in the 2500 block of St. Ann Street at the time of this incident. She testified that she knew the victim and that he knew her as “Danky.” Ms. Buckner, some family members and friends were sitting on her porch when she first noticed the victim at the intersection of St. Ann and Rocheblave Streets. He was walking and holding his cell phone, a shopping bag and a brick. After the victim passed her house, a young black male stood in front of her house and fired two or three shots at the victim. As the shooter ran, Ms. Buckner called the victim into her house, and Epiphany Smith called 911. The police investigated the shooting. Ms. Buckner could not identify the shooter.
The defendant testified that in 2011, he was an eleventh grade student at Joseph S. Clark Senior High School. On May 27, 2011, he, Mike and Cory went to play basketball at a playground on St. Ann Street. The victim arrived at the playground with a bag. The defendant did not see the victim with a phone. The victim played basketball with the defendant and the others for about an hour and then left the area before the others. As the defendant gathered his belongings, he noticed that his cell phone was missing. Two young boys, who had been watching the group play basketball, told the defendant that the victim took his phone. The defendant, Mike and Cory followed the victim to retrieve the defendant’s cell hphone. The *158 group caught up with the victim in front of Ms. Buckner’s house. As the defendant and Cory approached, the victim picked up a brick and started yelling for someone to call the police. The victim continued to walk away. Cory shot at the victim one time, and then the defendant and. Cory ran away.
During re-direct examination, the defendant stated that he did not tell the police that Cory was the shooter because they did not ask him that question. The defendant also related that at the time of this trial, Mike was in jail and Cory was deceased.
ERRORS PATENT
After reviewing the record, we determined that there is an error patent concerning the rendition of the verdict on Count 2 of the indictment. The error will be discussed in Assignment of Error Number 3.
We also find that there is a second error patent. The district court failed to impose a consecutive five-year enhancement sentence as mandated by La. R.S. 14:64.3(A). Thus, the sentence is illegally lenient. State v. Joseph, 2010-1090 (La.App. 4 Cir. 8/12/11), 71 So.3d 549. In State v. Burton, 2009-0826 (La.App. 4 Cir. 7/14/10), 43 So.3d 1073, this Court held that in cases where minimum sentences are not imposed, the sentences are indeterminate, requiring the sentences to be vacated and the matter remanded for resentencing according to law for clarification of whether the defendant’s sentence includes any additional punishment under La. R.S. 14:64.3. Thus, the defendant’s eighteen-year sentence is vacated and remanded for resentencing.
MOTION TO DISMISS APPEAL
On June 25, 2013, the State filed a motion to dismiss this appeal as untimely. |fiLa.C. Cr.P. art. 914 provides as follows:
Method and time of appeal
A. A motion for an appeal may be made orally in open court or by filing a written motion with the clerk. The motion shall be entered in the minutes of the court.
B. The motion for an appeal must be made no later than:
(1) Thirty days after the rendition of the judgment or ruling from which the appeal is taken.
(2) Thirty days from the ruling on a motion to reconsider sentence filed pursuant to Article 881.1, should such a motion be filed.
A review of the record herein reflects that defendant was convicted on May 29, 2012. At that time, the defendant’s counsel did not seek an appeal either orally or through written notice. Likewise, on May 31, 2012, when the trial judge vacated the original verdict, there was no oral or written motion for appeal from the defense. However, when the defendant was sentenced on August 16, 2012, defense counsel orally noticed the intent to appeal.
Although an appeal may be taken only from a conviction and sentence, this Court has held that it is not necessary to dismiss an appeal taken after conviction but before sentencing because “[djismissing the appeal would simply result in a delay of the appellate process and hinder defendant’s right to appeal.” State v. Martin, 483 So.2d 1223, 1225 (La.App. 4th Cir.1986). See also State v. Pleasant, 2011-1675 (La.App. 4 Cir. 10/17/12), 102 So.3d 247. Accordingly, the State’s motion to dismiss appeal is denied.
ASSIGNMENT OF ERROR NUMBER 1
In a first assignment of error, the defendant argues that the evidence was insufficient to sustain his conviction of dis *159 charge of a firearm during a crime of violence (Count 2). The defendant bases his insufficiency argument on the fact that no one testified they saw the defendant shoot at the victim.
17“In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).... [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. Captville, 448 So.2d 676, 678 (La.1984).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372, 378 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438.
When the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentifieation. State v. Weary, 2003-3067, p. 18 (La.4/24/06), 931 So.2d 297, 311.
 The testimony of a single witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Wells, 2010-1338, p. 5 (La.App. 4 Cir. 3/30/11), 64 So.3d 303, 306. A factfinder’s decision concerning the credibility of a witness will not be disturbed unless it is clearly contrary to the evidence. State v. James, 2009-1188, p. 4 (La.App. 4 Cir. 2/24/10), 32 So.3d 993, 996.
The victim in this case testified that as he walked on Orleans Avenue, the defendant and two of the defendant’s associates approached him from the opposite direction. The victim turned around to see the defendant following him. The | ¿victim crossed the street, and the defendant followed him. The defendant caught up with the victim and demanded the victim’s cell phone. The victim refused the demand and picked up a brick for protection. With that, the defendant drew his gun and pointed it in the victim’s face. The victim turned and walked away. The defendant followed close behind. When the defendant was about ten feet behind the victim, he slowed down and shot at the victim. After firing the shots, the victim said that the defendant ran away. The victim testified that he was absolutely certain that the defendant was the individual who shot at him. Considering the victim’s positive identification of the defendant, the jury was not unreasonable in determining that the defendant was the man who shot at the victim.
The defendant’s testimony had no credibility. Although the defendant said that Cory[1] was the person who fired at the victim, the defendant neglected to tell that to the police prior to trial because: “They (the police) didn’t ask [him] about nothing.” In fact, the defendant did not advise anyone about Cory until cross-examination at trial.
There was no mistake as to the defendant’s identity. In chilling detail, the victim testified that he got a good look at the defendant because the defendant pointed a gun directly into his face when he refused *160 to relinquish his cell phone. Moreover, the victim knew the defendant from high school.
Applying reason and common sense to the facts in this case, it was not unreasonable for the jury to conclude that the State proved beyond a reasonable doubt the defendant’s identity as the person who shot at the victim. This assignment has no merit.
^ASSIGNMENT OF ERROR NUMBER 2
In his second assignment, the defendant argues violation of his statutory right to back strike a previously-accepted juror prior to the swearing-in of the final jury in violation of La.C.Cr.P. art. 799.1.[2]
This issue has not been preserved for appellate review because the defense failed to lodge a contemporaneous objection to the court’s refusal to allow the back strike. La.C.Cr.P. art. 841.
Regardless, even if the issue had been properly preserved for review, this assignment of error is without merit.
Defense counsel inquired about back striking Mr. Perkins, a provisionally accepted juror. At that time, the defense had one peremptory challenge remaining. The judge responded: “You need to back strike within a round, within a round. So there’s no back striking to the six that are already in the back.” Rather than objecting, defense counsel replied: “Okay.”
While it is true that considering the plain language of La.C.Cr.P. art. 799.1, the trial judge in this case erred in denying the defense permission to back strike Mr. Perkins, the defense suffered no prejudice from the error because Mr. Perkins was not seated as a juror. The trial judge excused him. (“... [t]he Court’s | ^excusing juror ... Mr. Perkins in the front row, he’s rattled to death, it’s twice this month.”)
This assignment has no merit.
ASSIGNMENT OF ERROR NUMBER 3
This third assignment argues that the trial court erred in conducting an eviden-tiary hearing ex proprio motu to have the jury foreperson and another juror “clarify” the verdict on Count 2.
The State concedes this assignment has merit.
The record herein indicates that on May 29, 2012, the minute clerk read the jury’s verdicts as guilty as charged on Count 1 and guilty of attempted use of a weapon, as the phrase “during a violent crime” seemingly marked through. When questioned whether the verdicts were as the minute clerk read, the jurors nodded their heads in agreement. The minute clerk recorded the verdicts as guilty on count 1 and guilty of attempted use a weapon on Count 2. Thereafter, the judge discharged the jury.
Two days later the trial judge called Ms. Fortier and Ms. Schroeder, the jury fore *161 person and a juror, respectively, back to court to “clarify” the verdict as to Count 2:
JUDGE:
As to the count of illegal use of a weapon during a violent crime, do you [Ms. Fortier] recall what the jury’s verdict was?
MS. FORTIER:
It was the second one on the list.
JUDGE:
| nSecond one from the top?
MS. FORTIER:
Yes.
JUDGE:
Which would be guilty of attempted illegal use of a weapon during a violent crime?
MS. FORTIER:
Yes.
JUDGE:
The fourth one from the top is guilty of attempted illegal use of a weapon. Was that not your verdict?
MS. FORTIER:
No. Can you say the two again?
JUDGE:
I’ll read all five of them. No. 1 was guilty as charged of illegal use of a weapon during a violent crime; No. 2 was guilty of attempted illegal use of a weapon during a violent crime; No. 3 was guilty of illegal use of a weapon, notice that it’s not in pursuit of a violent crime; No. 4 is guilty of attempted illegal use of a weapon, again, not pursuant to a violent crime.
MS. FORTIER:
I think the second one was what we had chosen because we felt it was associated with a violent crime.
JUDGE:
On this jury verdict form it reads: We, the jury find the defendant guilty of attempted use of a weapon during a violent crime all written in black ink and then there’s a blue line, [through] four of the words, can I show this to you, Ms. Fortier, and maybe you could enlighten me?
MS. FORTIER:
I can. When we first entered the jury room before we even discussed anything [,] first thing I did was write the information on the back of the |iasheet. And then when you sent us back to come up with a verdict, I had a different pen.
JUDGE:
Explain to me this blue line right here.
MS. FORTIER:
Because when I first wrote it when we first walked in the room before we even had any discussions I had a blue pen and I was just copying the information I had on the bottom.
JUDGE:
So this line was not designed to strike the phrase during a violent crime.
MS. FORTIER:
No, it was not.
* ❖ *
JUDGE:
... I presumptively viewed the line as a scratch through and didn’t do anything about it because it looked that clear to me. I don’t know if I mentioned to you the next day, I woke up at 3:45 in the morning that night thinking about that line.
* * ❖
JUDGE: Did you hear the verdict read the other night ...
MS. FORTIER: I recall reading it, but not in its entirety.
JUDGE: You don’t recall [the minute clerk] reading something that was in-
*162 consistent with what your verdict was?
MS. FORTIER: I wasn’t, it was shorter.
MS. FORTIER: May I ask a question ... So you’re suggesting that essentially ... [the minute clerk] read a different verdict than what we had returned?
JUDGE: I’m not suggesting it. That’s exactly what I’m saying.
_b
MS. FORTIER: Well, you know what I assumed? I assumed it was the legalese thing.
JUDGE:
Let the record reflect that the recorded verdict is vacated and that the verdict of the jury now as to Count 2 will be recorded as guilty of attempted use of a weapon during a violent crime ... The verdict as to Count 1 remains.
La.C.Cr.P. art. 810 provides in pertinent part:
Form of verdict; delivery of verdict
When a verdict has been agreed upon, the foreman shall write the verdict on the back of the list of responsive verdicts given to the jury and shall sign it. There shall be no formal requirement as to the language of the verdict except that it shall clearly convey the intention of the jury....
“If the court finds that the verdict is incorrect in form or is not responsive to the indictment, it shall refuse to receive it, and shall remand the jury with the necessary oral instructions. In such a case the court shall read the verdict, and record the reasons for refusal.” La.C.Cr.P. art. 813.
In State v. Nazar, 96-0175 (La.App. 4 Cir. 5/22/96), 675 So.2d 780, this Court found that the trial court lacked authority to clarify its verdict. In Nazar, the defendant was originally charged with aggravated battery, but the charge was amended to simple battery. The trial court found the defendant guilty of attempted simple battery, a non-verdict. The State filed a motion to “clarify” the verdict. The trial court vacated its previous verdict and found the defendant guilty of simple battery. Nazar appealed to the Criminal District Court Appellate Division, which reversed the conviction and acquitted him of the charge. This Court granted the State’s application to review the ruling.
|14On appeal, one of the arguments asserted by the State was that the trial court had authority to replace the invalid verdict with a valid verdict pursuant to La.C.Cr.P. art. 813. This Court held, in pertinent part:
According to the State, the trial court may vacate its prior verdict and find the defendant guilty of simple battery. La. C.Cr.P. art. 813 provides:
If the court finds that the verdict is incorrect in form or is not responsive to the indictment, it shall refuse to receive it, and shall remand the jury with the necessary oral instructions. In such a case the court shall read the verdict, and record the reasons for refusal.
Under La.C.Cr.P. art. 820 all provisions regulating responsive verdicts and the effect of verdicts shall apply to eases tried without a jury. Contrary to the State’s position, La.C.Cr.P. art. 813[3] *163 does not provide for a motion to clarify the verdict. The State cites no article of the Code of Criminal Procedure or statute which gives the trial court authority to change its prior verdict. The trial court had no authority to vacate a prior verdict of guilty of attempted simple battery (even though not a recognized crime) and to find the defendant guilty of the greater offense of simple battery.[4] The trial court erred by “clarifying” the verdict to guilt [sic] of simple battery.
Id. at p. 2, 675 So.2d at 781-82.
Based upon State v. Nazar, 96-175 (La. App. 4 Cir. 5/22/96), 675 So.2d 780, the trial court erred by holding a hearing to “clarify” and then changing the verdict on Count 2. This assignment has merit.
ASSIGNMENT OF ERROR NUMBER 4
By this assignment, the defendant attacks his sentences as excessive, on the basis that he is a first offender with no record and no history of violence.
 In State v. Smith, 2001-2574 (La.1/14/03), 839 So.2d 1, the Louisiana Supreme Court set forth the standard for evaluating a claim of excessive sentence:
Louisiana Constitution of 1974, art. I, § 20 provides, in pertinent part, that “[n]o law shall subject any person to ... excessive ... punishment.” (Emphasis added.) Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Cann, 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462; cf. State v. Phillips, 2002-0737, p. 1 (La.11/15/02), 831 So.2d 905, 906.
Smith, 2001-2574, pp. 6-7, 839 So.2d at 4.
In State v. Batiste, 2006-0875 (La.App. 4 Cir. 12/20/06), 947 So.2d 810, this Court further explained that a reviewing court may not set aside a sentence for excessiveness if the record evidences a factual basis for the imposed sentence, even if there has not been full compliance with La.C.Cr.P. art. 894.1:
An appellate court reviewing a claim of excessive sentence must determine whether the trial court adequately complied with the statutory guidelines in La.C.Cr.P. art. 894.1, as well as whether the facts of the case warrant the sentence imposed. State v. Landry, supra; State v. Trepagnier, 97-2427 (La.App. 4 Cir. 9/15/99), 744 So.2d 181. However, *164 as noted in State v. Major, 96-1214, p. 10 (La.App. 4 Cir. 3/4/98), 708 So.2d 813:
The articulation of the factual basis for a sentence is the goal of Art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, resentencing is unnecessary even when there has not been full compliance with Art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
If the reviewing court finds adequate compliance with art. 894.1, it must then determine whether the sentence the trial court imposed is too severe in light of the particular defendant as well as the circumstances of the case, “keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged.” State v. Landry, 2003-167116 at p. 8, 871 So.2d [1235] at 1239 [ (La.App. 4 Cir.2004)]. See also State v. Bonicard, 98-0665 (La. App. 4 Cir. 8/4/99), 752 So.2d 184.
Batiste, 2006-0875, p. 18, 947 So.2d at 820.
On his conviction for attempted armed robbery with a firearm, the defendant herein was facing a sentence of zero to forty-nine and one half years at hard labor. La. R.S. 14:(27)64.3. The trial judge imposed an eighteen year sentence, which is well below the mid-range.
For his conviction of attempted discharge of a firearm during a crime of violence, the defendant’s sentencing range was zero to ten years. La. R.S. 14:(27)94F.[5] The defendant received five years, half the maximum sentence.
Additionally, as the following portion of the sentencing hearing shows, the trial judge afforded the defendant the added consideration of adjusting the defendant’s sentence lower than he had originally considered.
In sentencing the defendant, the trial judge noted:
It is absolutely mindboggling to me that someone would attempt to shoot somebody and attempt to arm rob them or at the very least fire a couple of rounds over a cell phone ... That is crazy. Its absolute insanity.
[The defendant] is looking at ten to twenty years on the gun and zero to forty-nine and a half years on the attempted armed robbery. I showed you the other day the number that I had written down and if anybody had told me that [the defendant] was going to get less than twenty-five or thirty years, they would have been absolutely wrong. I have nothing to go on but blind [ 17faith. I mean the man’s mamma has been corn *165 ing for months and months and maybe even a year since I have been here.
The pastor comes here and she puts on an incredible presentation ...
I heard the testimony in this case. It was to use that over used word I used earlier it was “chilling.” It was scary.
What was really scary to me and what stands out the most other than the fact that these kids carry guns like we used to carry a box of cigarettes ... The [victim] doesn’t want to give up his cell phone. The [victim] would rather run the risk of walking away and getting shot than give up his cell phone and maybe that’s what triggered [the defendant] not to shoot at [the victim]. How dare that victim defy me and my gun! And maybe that’s why [the defendant] fired a couple of rounds some place to see if [the victim] would chicken out and give up the cell phone....
The trial judge clearly articulated the basis for the sentence.
In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. See State v. Smith, 99-0606 (La.7/6/00), 766 So.2d 501.
In this case, the defendant’s sentences for attempted armed robbery with a firearm and attempted discharge of a firearm during a crime of violence were within the sentencing ranges for the offenses he was convicted of and are not disproportionate to the offenses. On both convictions, the defendant received less than the maximum sentences the court may have imposed.
The trial court considered the mitigating testimony offered by the defendant’s spiritual adviser and fashioned a sentence tailored specifically to this defendant. Moreover, the defendant’s sentence is not excessive considering the sentences imposed in other attempted armed robbery cases. See State v. Ambeau, 2008-1191 (La.App. 4 Cir. 2/11/09), 6 So.3d 215 (twenty-five years for attempted armed robbery not constitutionally excessive); State v. Nash, 2012-1146 (La.App. 3 Cir. 4/3/13), 112 So.3d 409 (twenty years for attempted armed robbery, first offense, not excessive); State v. Burford, 39,610 (La.App. 2 Cir. 5/11/05), 902 So.2d 1190 (thirty and forty years for attempted armed robbery not excessive).
Taking into account the number of gunshots fired, the wholly illegal motive, and the serious injury which might have been inflicted on the victim and innocent bystanders, we do not find that the trial judge abused his broad discretion in sentencing the defendant to eighteen years for attempted armed robbery.
Neither was the defendant’s five-year sentence for attempted discharge of a firearm during a crime of violence excessive. The judge imposed the statutory minimum sentence. See La. R.S. 14:(27)94F.
This assignment has no merit.
ASSIGNMENT OF ERROR NUMBER 5
In a final assignment, the defendant argues that his counsel was ineffective in failing to file a motion to reconsider his sentence.
Generally, claims of ineffective assistance of counsel are more properly raised by application for post-conviction relief in the trial court, where an evidentiary hearing can be conducted if warranted, unless the record on appeal is sufficient to make the determination. State v. McCarthy, 2012-0342, p. 4 (La.App. 4 Cir. 3/27/13), 112 So.3d 394, 397. Ineffective assistance of counsel claims are reviewed *166 under the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail, the defendant must show both that: (1) counsel’s performance was deficient; and (2) he was prejudiced by the deficiency. State v. Jackson, 97-2220, p. 8 (La.App. 4 Cir. 5/12/99), 733 So.2d 736, 741. Counsel’s performance is considered ineffective when it can be |19shown that he made errors so serious that counsel was not functioning as the “counsel” guaranteed to the defendant by the Sixth Amendment. Id. at 686, 104 S.Ct. at 2064. Likewise, counsel’s deficient performance will have prejudiced the defendant if the errors were so serious as to deprive the defendant of a fair trial. Id. To carry this burden, a defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Strickland, 466 U.S. at 693, 104 S.Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id. This Court has recognized that a defendant must make both showings to establish that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4th Cir.1992).
This record is sufficient to review the defendant’s claim of ineffective assistance.
This Court has held that the failure to file a motion to reconsider sentence or to object to the sentence at the time it is imposed precludes a defendant from raising a claim about his sentence on appeal. See State v. Jenkins, 2009-1551 (La.App. 4 Cir. 6/30/10), 45 So.3d 173; State v. Stewart, 2004-2219 (La.App. 4 Cir. 6/29/05), 909 So.2d 636; State v. Rodriguez, 2000-0519 (La.App. 4 Cir. 2/14/01), 781 So.2d 640; State v. Tyler, 98-1667 (La.App. 4 Cir. 11/24/99), 749 So.2d 767.
The defendant herein objected to his sentence at the time of imposition. Moreover, his sentences were reviewed in the preceding assignment of error and determined not to be excessive. The defendant has failed to show that he was prejudiced by counsel’s failure to file a motion to reconsider sentence. This assignment has no merit.
CONCLUSION
^[^Accordingly, we affirm the defendant’s conviction on Count 1, vacate the sentence and remand for resentencing to include imposition of the five-year sentence enhancement for the use of a firearm during the attempted armed robbery. La. R.S. 14:(27)64.3. We reverse the conviction and sentence on Count 2 on the basis the trial court had no authority to “clarify” the verdict and remand the matter for further proceedings in accordance with the discussion in Assignment of Error Number 3.
AFFIRMED IN PART; REVERSED IN PART; VACATED AND REMANDED FOR RESENTENCING.

. Cory was deceased at the time of trial.

. Back striking is permitted by La.C.Cr.P. art. 799. 1, which provides:
Challenges; use of all available challenges Notwithstanding any other provision of law to the contrary, and specifically notwithstanding the provisions of Article 788, in the jury selection process, the state and the defendant may exercise all peremptory challenges available to each side, respectively, prior to the full complement of jurors being seated and before being sworn in by the court, and the state or the defendant may exercise any remaining peremptory challenge to one or more of the jurors previously accepted. No juror shall be sworn in until both parties agree on the jury composition or have exercised all challenges available to them, unless otherwise agreed to by the parties. See also, State v. Lewis, 2012-1021 (La.3/19/13), 112 So.3d 796, and State v. Patterson, 2012-2042 (La.3/19/13), 112 So.3d 806.

. Subsection (a) of the Official Revision Comment to La.C.Cr.P. art. 813 provides:
Former R.S. 15:402 and the jurisprudence make it clear that until a verdict is received and recorded, it is not a verdict, and the *163 jury has the right to alter it. See State v. Owens, 193 La. 505, 190 So. 660 (1939). Although the problem has not arisen, what can occur between the time of the reception of the verdict and the dismissal of the jury should be considered. The judge can receive a verdict and, thereafter, realize that it is not responsive. If the jury has not been dismissed, there is no reason why the judge may not set aside the verdict and remand the jury. This article handles that situation.

. This case differs from Nazar, in that the verdict on count 2 herein was downgraded to the lesser charge of attempt, whereas in Na-zar, the verdict was changed to a greater offense than originally decreed.

. La. R.S. 14:94A and F, regarding illegal use of weapons or dangerous instrumentalities, provides in pertinent part:
A. Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm to a human being.
F. Whoever commits the crime of illegal use of weapons or dangerous instrumentalities by discharging a firearm while committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit a crime of violence ..., shall be imprisoned at hard labor for not less than ten years nor more than twenty years, without benefit of parole, probation, or suspension of sentence. ...