ROSEMARY LEDET, Judge.
| ,This is a criminal appeal. The defendant, Francis Ross, Jr., appeals his convictions on the following three counts: count one, possession of marijuana, first offense, a violation of La. R.S. 40:966(E)(1); count two, possession of carisoprodol (Soma), a violation of La. R.S. 40:969(C); and count three, possession of cocaine, a violation of La. R.S. 40:967(0(2). For the reasons that follow, we affirm his conviction and sentence as to count one, possession of marijuana, first offense; reverse his convictions and sentences as to counts two and three, possession of carisoprodol and cocaine, respectively; and remand for a new trial on counts two and three. Given our reversal of Mr. Ross’ convictions on counts two and three, we pretermit addressing his contentions that relate to those two counts.

STATEMENT OF THE CASE

On June 15, 2012, Mr. Ross was charged in a three count bill of information. The bill of information subsequently was amended to charge the following three counts: count one, possession of marijuana, first offense; count two, possession of carisoprodol; and count three, possession of cocaine. Mr. Ross pleaded not guilty to all three counts. Mr. Ross’ motion to suppress the evidence was denied.
|20n January 7 and 9, 2013, a bench trial was held on the misdemeanor charge, count one; and a jury trial, before a six-person jury, was held on the two felony charges, counts two and three. Both the district court and the jury found Mr. Ross guilty as charged. On January 29, 2013, the district court denied Mr. Ross’ motion for a new trial and imposed the following sentences: on count one, six months in *761 Orleans Parish Prison; and on counts two and three, respectively, to three years at hard labor, to run concurrently with all sentences in the instant case and any other sentence he was serving. The district court also imposed court costs on Mr. Ross. The district court denied Mr. Ross’ motion to reconsider sentence.
On March 27, 2013, Mr. Ross was adjudicated a fourth-felony habitual offender as to counts two and three. On the same date, the district court vacated the original sentences on those counts and resentenced Mr. Ross to thirty years at hard labor on each count, without the benefit of parole, probation, or suspension of sentence, with both sentences to run concurrently with each other. This appeal followed.

STATEMENT OF THE FACTS

On April 26, 2012, a trio of New Orleans Police Department (“NOPD”) narcotics detectives — Marcell Foxworth, Douglas McGowan, and Dwayne Bastían — conducted a traffic stop of Mr. Ross. According to Detective Bastían, he saw Mr. Ross driving a Moped motor scooter without a helmet. Because Detective Bastían was working undercover — dressed in plain clothes and driving an unmarked vehicle— he radioed Detective Foxworth and his partner, Detective McGowan, to stop Mr. Ross. When Detective Foxworth and McGowan stopped Mr. Ross, they asked him for his driver’s license. Instead, Mr. Ross presented a Louisiana identification card. A name check revealed that Mr. Ross had two ^outstanding warrants from Jefferson Parish and a suspended driver’s license. While the officers were verifying the warrants, Detective Bastían arrived at the scene.
After the officers verified the outstanding warrants, they arrested Mr. Ross on the two warrants and issued him a traffic citation for operating a motor vehicle without a valid driver’s license and without wearing a helmet.[1] During the pat down of Mr. Ross incident to his arrest, Detective Foxworth discovered a plastic bag between Mr. Ross’ belt buckle and belt. The bag contained five round white pills, a green vegetable matter the detectives believed to be marijuana, and a rocklike substance the detectives believed to be crack cocaine. Detective Foxworth gave the bag to Detective Bastían, who delivered it to Central Evidence and Property. The officers also found $302.00 in cash on Mr. Ross.
NOPD Crime Lab Criminalist Brian Schultz, who was qualified as an expert in the field of chemistry and testing and analysis of narcotics, testified that he tested the substances in the two bags (identified as NOPD Item # D-039871-12). He testified that the substances tested positive for the presence of marijuana, carisoprodol, and cocaine. He also identified the report he prepared.
Myesha Bouie, a NOPD complaint operator, was the sole defense witness. She identified the following two incident recalls dated April 26, 2012:(i) a traffic stop under NOPD Item # D-039794-12, indicating that it was initiated at “11:18 [a.m.];” and (ii) a drug violation under NOPD Item # D-039871-12, indicating that it was initiated at “12:08[p.m.].”

DISCUSSION

Counseled Assignment of Error Number One
|4Mr. Ross’ first counseled assignment of error is that the district court erred in denying him the right to back strike one of *762 the jurors, Janis Roberts.[2] At every step, Mr. Ross preserved his right to back strike and his objection to the district court’s rulings. During voir dire, several prospective jurors were interviewed in chambers, followed by a challenge conference. At that conference, Mr. Ross objected generally to the district court’s pronouncement that it was not going to allow back strikes, citing La.C.Cr.P. art. 799.1.[3] In response, the district court stated: “Not as long as I am allowing simultaneous peremptory challenges.” The district court then proceeded through the parties’ written challenges. At the point when both the State and the defense had each exercised two peremptory challenges, the district court stated that Juror Roberts was acceptable and would become Juror Number 5. (Ms. Roberts was the juror that Mr. Ross later attempted to back strike.) The challenge conference continued, with the district court noting a third peremptory challenge for both the State and the defense, and then stating: “Juror Number 6 will be [Juror] Goines. We have a jury.”[4]
|fiThe district court then proceeded to go through all of the written challenges submitted by the parties, concluding by stating that the State had used all six of its challenges and that the defense had used five of its six challenges. At that point the following colloquy occurred:
MS. TEST [DEFENSE COUNSEL]:
And, Judge, despite the Court’s ruling that there are no back strikes, we would like to exercise a back strike on Juror Number — Juror Number 11, ... Roberts.
THE COURT:
Denied. No back strikes. If I allow you all to do it, I have to allow the State and that is circumventing the rule of me saying no back strikes. Let me continue.
The district court then proceeded to choose an alternate juror, informing each side it would have one peremptory challenge to exercise in choosing that alternate. The following colloquy occurred:
MS. TEST:
And, Judge, can I write on here that if we were permitted to back strike, we would back strike Number 11?
THE COURT:
No, you can put it on the record. I mean you have already put it on the record.
MS. TEST:
Thank you, Judge.
(PAUSE IN PROCEEDINGS)
THE COURT:
*763 All right, well, Defense wishes to use its alternate peremptory challenge or [sic] Number 18, Finnan. So, going in order, [Juror] Duplessis would be the alternate.
IfiAnd, so, I would like to note for the record, because Defense wanted to put its objection to the Court not allowing them to back strike, you had not already used all of your peremptory challenges, and if you chose or wanted to choose to challenge Number 11, you should have listed him or her as your sixth challenge. You were purposely and intentionally trying to circumvent the Court’s ruling of no backstriking by doing that. So, denied.
MS. TEST:
Note our objection.
Mr. Ross proceeded to trial before the six-person jury on counts two and three, possession of carisoprodol and cocaine, respectively, and was found guilty as charged by unanimous verdicts, as required by law for conviction by a six-person jury.
As noted, on appeal, Mr. Ross contends that the district court erred in denying his right to back strike. “Back striking, or the exercise of a peremptory challenge to strike a provisionally-accepted juror, is expressly authorized by La. C.Cr.P. art. 799.1.” State v. Lewis, 12-1021, p. 8 (La.3/19/13), 112 So.3d 796, 801. In 2006, the Legislature enacted Article 799.1 to codify the Louisiana Supreme Court’s prior jurisprudence. Lewis, 12-1021 at p. 8, 112 So.3d at 801 (citing State v. Taylor, 93-2201, p. 22. (La.2/28/96), 669 So.2d 364, 376-77; and State v. Watts, 579 So.2d 931 (La.1991)). Article 799.1 “explicitly condones a juror selection strategy in which counsel may defer a final decision on accepting one or more jurors until counsel has viewed the entire panel of provisionally selected jurors, before they are sworn in by the court.” Lewis, 12-1021 at pp. 8-9, 112 So.3d at 801.
To the extent the district court refused to allow Mr. Ross to back strike, it violated the plain language of Article 799.1 and thus erred. Nonetheless, the Louisiana Supreme Court, in two companion cases decided last year — Lewis, \ nswpra; and State v. Patterson, 12-2042 (La.3/19/13), 112 So.3d 806 — held that the error of failing to follow Article 799.1 is subject to a harmless error analysis— whether the guilty verdict actually rendered in the trial was surely unattributable to the error. The narrow issue presented in this case is thus whether the district court’s error in disallowing Mr. Ross’ right to back strike Juror Roberts was harmless.
To provide a background for addressing this issue, we briefly summarize the Supreme Court’s two recent companion cases — Lewis and Patterson.
In Lewis, at the conclusion of voir dire of a fourth venire panel, the trial judge denied the defendant the right to back strike unsworn Juror Wolfe, whom the defendant had provisionally accepted during voir dire of the first venire panel. The defendant was subsequently convicted. On appeal, this court found that, considering the plain language of La.C.Cr.P. art. 799.1, the district court had erred in denying the defendant the right to back strike the juror. Ultimately, this court affirmed the defendant’s convictions and sentences, finding that the error was harmless, correctly citing the Louisiana Supreme Court’s prior decision in Taylor, supra for the proposition that the error was subject to the harmless error analysis.[5] Granting *764 the defendant’s writ application in Lewis[6] the Supreme Court reversed.[7]
In so doing, the Supreme Court in Lewis confirmed that the error was subject to the harmless error analysis set forth in Taylor, supra. The Court, however, found that the State had failed to meet its burden of proving that the guilty verdicts rendered in the case were “surely unattributable” to the district court’s error in | ¡prohibiting the defendant from using a peremptory challenge to back strike Juror Wolfe. The Supreme Court distinguished the circumstances in Lewis from those in its prior decision in Taylor, stating:
First, apart from the practical and legal impossibility of following juror Wolfe into the jury deliberations to determine his effect, if any, on the resulting verdicts, the verdicts in this case were less than unanimous — 10-2 on count one and 11-1 on count two — suggesting that the evidence, and the jury’s belief that the state had proved defendant’s culpability beyond a reasonable doubt, were not overwhelming.
Second, this case is distinguishable from Taylor (wherein we concluded the district court error in not allowing back strikes was harmless) in two important respects. First, in Taylor, the defendant had a full opportunity to peremptorily challenge the objectionable juror. Not only was the defendant aware early in the voir dire that the district court would not permit back strikes, but the juror defendant identified as the individual he would have peremptorily challenged was in the last panel and nothing prevented the defendant from challenging that juror at the time. That situa- . tion differs significantly from the present one, in which the defendant was led to believe that he would be able to exercise a back strike against juror Wolfe by the district court’s apparent acquiescence to his statement, at the close of the first venire panel, that “[w]e’d reserve.” Second, and most significantly, in Taylor, the defendant did not identify the juror he would have challenged until oral argument before this court. See Taylor, 93-2201 at 25, 669 So.2d at 377. Here, the objectionable juror was identified to the district court before jury selection was concluded, thereby eliminating any potential abuse of the jury selection process by the defendant. See Hailey, 02-1738 at 8 (La.App. 4 Cir. 9/17/03), 863 So.2d [564] at 569 (“[T]he effect of not requiring a defendant to specify at trial who he would have back-struck is to permit a defendant to gamble upon receiving a favorable jury verdict, and then, upon the return of an unfavorable verdict, scour the voir dire transcript for jurors whom he can claim he would have backstruck.”).
In the final analysis, given the particular facts and circumstances of this case, we cannot conclude with certainty that the jury’s guilty verdicts were surely unattributable to the error of the district court in denying defendant the right to use a peremptory challenge to back strike juror Wolfe and, thus, that the error in prohibiting the back strike was harmless beyond a reasonable doubt. (Footnotes omitted).
Lewis, 12-1021 at pp. 16-17, 112 So.3d at 805-06.
|flIn the companion Patterson case, the Supreme Court affirmed this court’s decision reversing a defendant’s conviction and sentence based on the district court’s violation of the defendant’s right to back strike *765 a provisionally-accepted juror.[8] This court in Patterson found that the district court’s error was not harmless. Agreeing with this court, the Supreme Court in Patterson reasoned as follows:
As we point out in Lewis, the state’s burden in a case such as this is a difficult one, given jury dynamics and the possible influence even a single juror may have on the course of deliberations. Lewis, 2012-1021 [slip op. at 16] 112 So.3d at 805. As the court of appeal correctly noted, that burden is even more difficult when, as here, there is a split 10-2 jury verdict, and the replacement of one juror could have changed the outcome.
Certainly, under some circumstances, the error in denying back strikes may be harmless. Such was the situation this court encountered in Taylor, where we found harmless error because the objectionable juror (who counsel did not identify until oral argument before this court) was a member of the fifth and final voir dire panel and counsel had the opportunity to challenge that juror before the swearing of the entire panel, but chose not to do so. Taylor, 1993-2201 at 25-26, 669 So.2d at 377-378. In this case, by contrast, counsel made it very clear that he wished to peremptorily challenge juror McCall and would have done so but for an error he made with the seating chart. Thus, unlike Taylor, there is no question that defense counsel would have struck Mr. McCall and the composition of the jury would have been different if not for the district court’s error in prohibiting back strikes.
The conviction in this case, as in Lewis, rests on witness credibility, as there is no physical evidence linking defendant to the crime. This fact, coupled with the less than unanimous jury verdict, makes its impossible to conclude, as the court of appeal correctly noted, that the verdict actually rendered in this case was surely unattributable to the error of the district court. The court of appeal correctly determined that the district court’s error in prohibiting back strikes was not harmless beyond a reasonable doubt and that defendant’s conviction and sentence must be vacated and the matter remanded to the district court for a new trial.
Patterson, 12-2042 at pp. 7-8, 112 So.3d at 811.
|inIn Patterson, as in Lewis, the Supreme Court rejected the notion that the defendant bore the burden on appeal of showing some specific prejudice that may have resulted from the district court’s erroneous ruling barring the defendant’s use of the back strike. Rather, the Supreme Court held that under the harmless error analysis the State had the burden of showing that the jury’s verdict was surely unattributable to the presence of the juror on the panel who, but for the district court’s violation of La.C.Cr.P. art. 799.1, would have been peremptorily challenged in favor of a different juror. Patterson, 12-2042 at p. 6, 112 So.3d at 811.
In the instant case, the State argues that the district court’s error was harmless, analogizing the facts and circumstances of the case to those in Taylor, in which the Supreme Court found that the district court’s erroneous denial of the defendant’s right to back strike a juror was harmless. The State correctly notes that the Supreme Court in Lewis distinguished that case from Taylor on several grounds that are present in the instant case. First, the court in Lems noted that the verdicts in Lewis were 10-2 and 11-1, which the Supreme Court interpreted as suggesting *766 that the evidence — and the jury’s belief that the State had proved the defendant’s culpability beyond a reasonable doubt— were not overwhelming. By contrast, in the instant case Mr. Ross was convicted by a unanimous verdict from the six-person jury. However, as Mr. Ross emphasizes, because this case was tried before a six-person jury, a unanimous verdict was required. La.C.Cr.P. art. 782(A). Hence, it would have taken only one not guilty vote to result in a hung jury and a mistrial. Put differently, the replacement of only one juror could have changed the outcome in this case.
| T1 Another relevant factor, arguably favoring a finding of harmless error, is that the jury in the instant case was presented with a relatively simple set of facts. Mr. Ross was lawfully stopped by a trio of police officers, placed under arrest based on two outstanding warrants, and searched incident to the arrest. The search incident to the arrest revealed the three controlled dangerous substances that Mr. Ross was charged with possessing. The two felony convictions for possession of those substances were primarily based on the un-contradicted testimony of two of the three police officers who were at the scene. The officers’ versions of the events were consistent with the two NOPD incident recalls in the case. The first incident recall reflected a traffic stop at 11:18 a.m. on April 26, 2012, at 13500 Lourdes Street, followed by a drug arrest that same date, at that same location, at 12:08 p.m., under a different item number. The controlled dangerous substances seized were introduced at trial; they were listed under the latter item number. Mr. Ross was issued a traffic citation for traffic violations under the first item number.
Despite the simplicity of the facts, the verdicts rendered in this case on counts two and three — similar to the guilty verdicts rendered in both the Lewis and Patterson companion cases — were based essentially on the credibility of the witnesses at trial, which in this case was two of the three officers involved in the traffic stop. Indeed, as noted elsewhere in this opinion, Mr. Ross attempted to discredit those officers by calling into question their testimony that Mr. Ross was stopped by a trio of narcotics officers solely because he was not wearing a helmet while operating his Moped.
The State also points out that, in the instant case, Mr. Ross knew of the district court’s policy of not permitting back strikes before the challenge conference. This was a factor that the Supreme Court in Lewis noted had weighed | ]2⅛ favor of its finding that the erroneous denial of the defendant’s right to back strike in Taylor was harmless. In Lewis, in which the Supreme Court found reversible error, it found that the defendant had been led to believe he would be able to exercise a back strike against the juror at issue by the district court’s apparent acquiescence to defense counsel’s statement at the close of the first venire panel that “we’d reserve” as to that particular juror, whom the defendant later sought to back strike. Lewis, 12-1021 at p. 17, 112 So.Bd at 806.
Also, in the instant ease Mr. Ross only listed five written peremptory challenges on his challenge sheet. Juror Roberts was seated as juror number five at a point when the district court had excused only two prospective jurors peremptorily challenged by each side. The sixth, and final, juror was seated after each side had exercised only three of their six peremptory challenges. The district court did go through the rest of the written challenges the parties had submitted, revealing that the. State had submitted six peremptory challenges and Mr. Ross, five. Thus, had Mr. Ross wished to strike Juror Roberts, *767 he could have listed her on his peremptory challenge sheet submitted to the court as his sixth challenge. This factor was viewed as favoring a finding of harmless error in Taylor, in which the juror the defendant identified as the one he would have back struck was in the fourth, and apparently final, venire panel. The Supreme Court stated that the defendant could have peremptorily struck him outright at that point.
On the other hand, a factor favoring a finding that the erroneous denial of the back strike was not harmless is that Mr. Ross identified the juror he wished to back strike immediately after the district court finished going through the challenges. At this juncture, the district court pointed out to the parties that the State had used all six of its peremptory challenges and that Mr. Ross had used only five. Mr. Ross | ^immediately stated that he wished to back strike Juror Roberts. Jury selection was not yet complete at that juncture, as the district court had yet to select an alternate juror. The alternate juror was selected after the district court denied Mr. Ross’ request to back strike Juror Roberts.
In the Lewis case, the Supreme Court stated that it had found “most significantly” in Taylor, in determining that the back strike error in that case was harmless, that the defendant did not identify the juror he would have back struck until oral argument before it. Lewis, 12-1021 at p. 17, 112 So.3d at 806 (citing State v. Hailey, 02-1738 (La.App. 4 Cir. 9/17/03), 863 So.2d 564). In Hailey, this court noted that “the effect of not requiring a defendant to specify at trial who he would have backstruck is to permit a defendant to gamble upon receiving a favorable jury verdict, and then, upon the return of an unfavorable verdict, scour the voir dire transcript for jurors whom he can claim he would have backstruck.” Hailey, 02-1738 at p. 8, 863 So.2d at 569.
An issue not discussed in either Lewis, Patterson, or Taylor was the possibility of a juror replacing a back struck one voting either not guilty or voting to convict of a lesser responsive verdict, despite uncon-tradicted evidence of guilt of the charged offense. “Jury nullification” is a recognized practice which allows a jury to disregard uncontradicted evidence and instructions by the district court. State v. Porter, 93-1106, p. 4, n. 5 (La.7/5/94), 639 So.2d 1137, 1140 (citing 2 Wayne R. La-Fave and Jerold H. Israel, CRIMINAL PROCEDURE § 21.1 (1984)).[9] In the instant case, besides the responsive verdicts of not guilty, the Irresponsive verdicts of the lesser included offense of attempted possession of the respective controlled dangerous substances was available as to both counts two and three. Mr. Ross was charged with possession of small amounts of the controlled dangerous substances at issue. Defense counsel raised at trial that Mr. Ross had been arrested and initially charged with possession with intent to distribute the small amounts of drugs, insinuating that the police abused their discretion and overcharged Mr. Ross. In addition, during defense counsel’s cross examination of the two police officers, both of whom were narcotics officers, defense counsel called into question their testimony that Mr. Ross was stopped by *768 a trio of narcotics officers solely because he was not wearing a helmet while operating his Moped. Given these circumstances, it cannot be concluded that but for Mr. Ross being precluded from back striking Juror Roberts a different juror seated in her place would have voted to convict him of the charged offenses.
In sum, it would be speculative to conclude that the two guilty as charged verdicts rendered by the six-person unanimous jury on counts two and three were surely unattributable to the district court’s error in denying Mr. Ross’ right to back strike Juror Roberts. The State failed to meet its burden of proving that the guilty verdicts rendered in this case were surely unattributable to that error. We thus find merit to this assignment of error. Accordingly, we reverse the convictions and sentences on counts two and three — possession of carisoprodol and possession of cocaine, respectively — and remand to the district court for a new trial on those counts.
11fiCounseIed Assignment of Error Number Two
In his multi-faceted second counseled assignment of error, Mr. Ross argues that the district court erred in making several rulings that denied him of the following rights: (1) to a twelve-person jury;[10] (2) to cross examine and confront witnesses against him; and (8) to have the jury properly instructed that to convict it had to find defendant guilty of knowingly and intentionally possessing the drugs.[11] Mr. Ross also argues that the district court erred in failing to grant his motion for a new trial insofar as it was based on these alleged district court errors. Because the first and third prong of Mr. Ross’ argument pertain to counts two and three, which we reverse on another ground, we limit our analyzing of those issues to mentioning them briefly in footnotes. Because the second prong — whether the district court denied Mr. Ross’ right to cross examine and confront witnesses against him — is pertinent to count one, we fully address that prong of Mr. Ross’ assignment of error.
The Sixth and Fourteenth Amendments to the United States Constitution and Article 1, § 16 of the Louisiana Constitution guarantee a criminal defendant a *769 | ^meaningful opportunity to present a complete defense. State v. Dressner, 08-1366, p. 15 (La.7/6/10), 45 So.3d 127, 137-38; State v. Mills, 12-0851, p. 9 (La.App. 4 Cir. 7/3/13), 120 So.3d 802, 808. Due process affords a defendant the right of full confrontation and cross examination of the State’s witnesses. State v. Joyner, 11-1397, p. 36 (La.App. 4 Cir. 10/24/12), 107 So.3d 675, 695-96, writ denied, 12-2494 (La.5/31/13), 118 So.3d 388; State v. Rubens, 10-1114, p. 44 (La.App. 4 Cir. 11/30/11), 83 So.3d 30, 59. “ ‘It is difficult to imagine rights more inextricably linked to our concept of a fair trial.’ ” State v. Sartain, 08-0266, p. 16 (La.App. 4 Cir. 12/30/08), 2 So.3d 1132,1141 (quoting State v. Van Winkle, 94-0947, pp. 5-6 (La.6/30/95), 658 So.2d 198, 201-02).
The right to present a defense, however, does not require the district court to permit the introduction of evidence that is irrelevant or that has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. State v. Fernandez, 09-1727, p. 14 (La.App. 4 Cir. 10/6/10), 50 So.3d 219, 229. The district court is mandated to maintain reasonable control over the mode and order of interrogating witnesses and presenting evidence in order to:
(1)Make the interrogation and presentation effective for the ascertainment of the truth;
(2) Avoid needless consumption of time; and
(3) Protect witnesses from harassment or undue embarrassment.
La. C.E. art. 611(A). “A witness may be cross examined on any matter relevant to any issue in the case, including credibility.” La. C.E. art. 611(B).
All relevant evidence is admissible, and evidence that is not relevant is not admissible. La. C.E. art. 402. Relevant evidence is defined as “evidence having 117any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.” La. C.E. art. 401. Evidence, although relevant, “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.” La. C.E. art. 403.
A district court’s ruling as to the admissibility of evidence will not be disturbed absent a clear abuse of discretion. State v. Cyrus, 11-1175, p. 20 (La.App. 4 Cir. 7/5/12), 97 So.3d 554, 565 (citing State v. Richardson, 97-1995, p. 14 (La.App. 4 Cir. 3/3/99), 729 So.2d 114, 122). Confrontation errors are subject to the harmless error analysis. State v. Broadway, 96-2659, p. 24 (La.10/19/99), 753 So.2d 801, 817; State v. Truvia, 09-0504, p. 14 (La.App. 4 Cir. 1/13/10), 29 So.3d 669, 678.[12]
*770 Mr. Ross contends that he was prevented from exercising his right to confront or cross examine witnesses against him and to present a defense as a result of the district court’s rulings sustaining the State’s objections at trial. On the 11Rfinal day of trial, defense counsel proffered the following list of the subject areas that she claimed she had been prohibited from covering during cross examination of Detectives Foxworth and Bastían:
1. The police picked on/selected Francis Ross for [sic] traffic stop, while not stopping other people who also violated traffic laws.
2. It is not customary practice for these police officers to stop someone for minor traffic infractions.
3. Motive to fabricate or make arrest: police were out looking for drug law violations.
4. Motive to fabricate or make arrest: use of information.
5. Motive to fabricate or make arrest: arrest credits are tracked [sic] calculated, monitored by supervisors, and used within COMSTAT meetings.[13]
6. Full exploration of what a narcotics field test is, the purpose, and the specifics of how the test was conducted in this case, the timing of the test, where the test was conducted, and why.
In his appellate brief, Mr. Ross argues that “[t]he incredulous [sic] story that four narcotics officers were needed to stop a helmet-less mo-ped rider for a mere traffic violation was the basis of Mr. Ross questioning the officers’ credibility.” Mr. Ross complains that the district court sustained the State’s relevancy objection when defense counsel asked Detective Foxworth the following question: “Now, when you were working that day, driving around New Orleans East, there’s a number of traffic violations, correct?” Defense counsel objected to the ruling, stating that the question went to the issue of Detective Foxworth’s credibility. Defense counsel explained that “[t]he partiality of witnesses is always relevant to discrediting and affecting the weight of their testimony.” The district court asked |19counsel to approach the bench, and an unrecorded discussion was held. Mr. Ross contends that during this bench conference a “five words or less objection” rule was imposed. This presumably is a reference to the district court asking the parties to give their reasons for objections in five words or less, which occurred during subsequent cross examination of Detective Foxworth.
When cross examination resumed, defense counsel questioned Detective Fox-worth regarding his making choices about who he was going to stop when he observed a traffic stop. The detective replied in the affirmative when asked whether his “story” was that three narcotics detectives stopped Mr. Ross for riding a scooter without a helmet. The detective reiterated that he and his partner had been asked by Detective Bastían to assist him in making the stop because Detective Bastían did not have a marked unit and *771 because only marked units could make traffic stops. Defense counsel’s question as to there being a number of traffic violations apparently was a prelude to the precise type of questioning counsel was permitted to follow-up with to call into question Detective Foxworth’s story. Given Mr. Ross was only stopped for one traffic violation, it cannot be said that the district court abused its discretion in believing either that the question had no relevance to the case or that its relevance was substantially outweighed by the danger of confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. See La. C.E. art. 403.
Mr. Ross next claims he was prevented from cross-examining Detective Foxworth on whether the traffic stop “was really a ruse or a pretext for trying to develop [Mr. Ross] into an informant.” However, there were no State objections during the questioning by defense counsel of Detective Foxworth concerning confidential informants.
12pMr. Ross next complains that his trial counsel was prohibited, due to the sustaining of the State’s objections, from questioning Detectives Foxworth and Bas-tían concerning arrest credits and statistics, questions “meant to show the officers’ biases and motivations or pressures to make certain arrests.” When defense counsel separately asked whether police districts keep track of all arrests made and whether supervisors keep track of that information, Detective Foxworth replied “I would assume so” to both questions. When defense counsel asked Detective Foxworth if his sergeant went to weekly COMSTAT meetings to talk about the number of arrests made in a given district, the State objected on relevance grounds; and the district court sustained the objection. Defense counsel objected to the ruling, stating that it was relevant to the officers’ motivations.
Detective Foxworth consistently testified that he had been contacted by Detective Bastían to assist — actually, to make— the stop of Mr. Ross because Detective Bastían was in an unmarked police unit. This was corroborated by Detective Bas-tian’s testimony. Given the context of the objection and the questioning preceding it, it cannot be said that the district court abused its discretion in sustaining the objection on relevancy grounds. Any relevancy as to the motivation of Detective Foxworth in making the traffic stop — inferring that the officers had to keep up their arrest numbers — was substantially outweighed by the danger of confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. The same reasoning applies to the “motivation” questions that were directed to the officers’ credibility. Regardless, as noted, Detective Foxworth essentially replied in the affirmative when asked by defense counsel whether records of arrests are kept and whether police supervisors keep track of that information.
| ¡.^During defense counsel’s cross examination of Detective Bastían he questioned the detective as to his police report in the case, which included a sworn affidavit. When defense counsel asked if the NOPD operations manual directed how to write those reports, the district court sustained the State’s objection on relevancy grounds. Defense counsel’s next question was whether everything relevant to the arrest had been entered in Detective Bastian’s report. The State again objected on relevancy grounds, but that objection was overruled by the district court. Defense counsel then proceeded to question Detective Bastían about what clothes Mr. Ross was wearing at the time of his arrest and whether those clothes were collected as *772 evidence. Detective Bastían also confirmed, in response to questions by defense counsel, that he was in an unmarked vehicle that day; that he was not in uniform; and that he was part of a six-man unit patrolling the area.
Similar to her questioning of Detective Foxworth, defense counsel questioned Detective Bastían as to whether there were a lot of traffic violations in New Orleans. When she asked if he might see a lot of traffic violations while on patrol, the State objected on relevancy grounds, and the district court sustained the objection. The court also sustained a relevancy objection to the next question of whether the detective made choices when deciding whom to stop for a traffic violation. However, when asked the immediately following question as to whether it was correct that he chose that Mr. Ross was going to be stopped for a traffic violation, Detective Bastían replied, without any objection by the State, that he “made the choice, yes.”
Detective Bastían confirmed that he had written a “7” in the arrest credit box, but when counsel next asked whether that meant that the Seventh District got an arrest credit for his arrest of Mr. Ross, the district court sustained the State’s Irrelevancy objection. Just as with Detective Foxworth, defense counsel asserted that the question was directed to the “motivation” of the officers. The motivation of the officers in making the stop was essentially irrelevant to the issue of whether Mr. Ross possessed the drugs. Even assuming some probative value as to the issue of credibility, insofar as the reason why the officers stopped defendant, it cannot be said that the district court abused its discretion in concluding that any probative value was substantially outweighed by the danger of confusion of the issues, misleading the jury, or by considerations of undue delay or waste of time. See La. C.E. art. 403.
In a related complaint, Mr. Ross asserts disparate treatment by the district court in allegedly preventing defense counsel from questioning Detective Bastían about his experiences and traffic citations as a narcotics officer by the sustaining of the State’s relevancy objections, but then permitting the State on redirect examination to “ask the questions” over defense counsel’s relevancy objection. The questions asked by defense counsel, however, were somewhat different from those asked by the State. Also, defense counsel was able to get Detective Bastían to admit that he had made the choice to stop Mr. Ross. The State’s questioning of Detective Bastían on redirect examination — which gave rise to defense counsel’s disparate treatment complaint — was directed to rebutting the inference established by defense counsel’s questioning that the officers either stopped Mr. Ross because they had to issue a certain a number of traffic citations or possibly some other reason, using the traffic stop as a pretext.
Finally, Mr. Ross complains that the district court prohibited defense counsel from questioning Detective Bastían regarding why a field test was not performed in the field, but rather at the police station. In contrast, the district court | ^permitted the State to question the officer about the field test on redirect examination. Mr. Ross correctly asserts that on redirect examination the State questioned Detective Bastían as to him doing a field test at the police station on the drugs seized from him. However, the only objection by defense counsel was a leading question objection when the prosecutor asked Detective Bastían whether it was fair to say there was nothing special about Mr. Ross’ case. Mr. Ross failed to cite any ruling by the district court prohibiting his counsel from *773 questioning either detective about the field test. Regardless, Detective Bastían testified that, when there was an arrest, they always did field tests back at the station. He also admitted that in this case he conducted field tests on the substances at the Seventh District Police Station. Moreover, NOPD Crime Lab Criminalist, Mr. Schultz, testified that he tested the three controlled dangerous substances under the item number of the case and that they tested positive, respectively, for marijuana, carisoprodol, and cocaine.
In sum, it cannot be said that the district court abused its discretion in ruling on the State’s objections to the extent that it denied Mr. Ross his constitutional right to confront and cross examine witnesses against him. Regardless, to the extent any ruling may have been an abuse of discretion, any such error was harmless. Stated otherwise, assuming the damaging potential of such cross examination was fully realized, any such error was harmless beyond a reasonable doubt; and the guilty verdicts rendered in the case were surely unattributable to such errors. There is no merit to this part of the instant assignment of error.
Counseled Assignment of Error Number Three
In his final counseled assignment of error, Mr. Ross argues that the two concurrent thirty-year sentences imposed on him on counts two and three under the | ¡^Habitual Offender Law as a fourth-felony habitual offender are unconstitutionally excessive. As noted at the outset, we pre-termit addressing this issue given our reversal of Mr. Ross’ convictions on counts two and three.
PRO SE ASSIGNMENT OF ERROR
In his two-part pro se assignment of error, Mr. Ross challenges his adjudication as a fourth-felony habitual offender.[14] Because we reverse Mr. Ross’ convictions on counts two and three, we pretermit addressing these issues.
ERRORS PATENT
A review of the record for errors patent reveals only one relating to the sentences imposed on Mr. Ross on counts two and three as a habitual offender. Given our reversal of counts two and three, this error patent is rendered moot.[15]

*774
DECREE

For the foregoing reasons, Mr. Ross’ conviction and sentence on count one— possession of marijuana, first offense — is affirmed; his convictions and sentences on counts two and three — possession of cari-soprodol and possession of ^cocaine, respectively — are reversed; and this matter is remanded to the district court for a new trial on counts two and three.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

. At trial, Detective Bastían identified the traffic citation that he issued to Mr. Ross for not wearing a helmet and for driving with a suspended driver's license.

. Back striking is "a party's exercise of a peremptory challenge to strike or excuse a prospective juror after initially accepting him, but prior to the final swearing of the jury panel.” State v. Plaisance, 00-1858, p. 30, n. 4 (La.App. 4 Cir. 3/6/02), 811 So.2d 1172, 1193.

. La.C.Cr.P. art. 799.1, provides:
Notwithstanding any other provision of law to the contrary, and specifically notwithstanding the provisions of Article 788, in the jury selection process, the state and the defendant may exercise all peremptory challenges available to each side, respectively, prior to the full complement of jurors being seated and before being sworn in by the court, and the state or the defendant may exercise any remaining peremptory challenge to one or more of the jurors previously accepted. No juror shall be sworn in until both parties agree on the jury composition or have exercised all challenges available to them, unless otherwise agreed to by the parties.

.The charges in counts two and three, for which Mr. Ross elected to be tried by a jury, called for a six-person jury, all six of whom had to concur to reach a verdict. La.C.Cr.P. art. 782(A).

. State v. Lewis, 10-1775 (La.App. 4 Cir.4/4/12), 96 So.3d 1165.

. State v. Lewis, 12-1021 (La.12/14/12), 104 So.3d 425.

. State v. Lewis, 12-1021 (La.3/19/13), 112 So.3d 796.

. State v. Patterson, 11-0648 (La.App. 4 Cir.8/24/12), 98 So.3d 439 (unpub.).

. Jury nullification is often cited when comparing it to the lawful prerogative of a jury to return a verdict of guilty of a responsive verdict. See State v. Lewis, 09-1404, p. 8 (La.10/22/10), 48 So.3d 1073, 1078 ("Treating the jury’s prerogative to return a responsive verdict similar to the jury's power of nullification, this court has consistently held that the jury must be given the option to convict the defendant of the lesser offense, even though the evidence clearly and overwhelmingly supported a conviction of the charged offense.”) (quoting State v. Porter, 93-1106, p. 4 (La.7/5/94), 639 So.2d 1137, 1140).

. The gist of Mr. Ross’ argument is that he was entitled to trial by a twelve-person jury as to counts two and three because ultimately he was necessarily subject to imprisonment at hard labor upon conviction as a habitual offender. The State’s counter argument is that Mr. Ross waived this argument. Regardless, we note that this court has previously rejected the same argument that Mr. Ross raises. See State v. Juengain, 09-0425 (La.App. 4 Cir.1/20/10), 41 So.3d 499 (noting that the habitual offender proceeding is a separate proceeding applicable only after conviction and has no bearing on the determination of the number of juror for the trial of the case).

. Mr. Ross argues that the district court erred in denying his trial counsel’s request to charge or instruct the jury that the State had to prove that he "knowingly and intentionally” possessed the two controlled dangerous substances for which he was being tried by the jury, cocaine and carisoprodol. The district court instructed the jury that the State had to prove that he "knowingly or intentionally” possessed the drugs. La.C.Cr.P. art. 802(1) states that the district court “shall charge the jury” ”[a]s to the law applicable in the case.” The law applicable as to counts two and three in the instant case, possession of carisoprodol and possession of cocaine, respectively, for which defendant was being tried by the jury, is that “it is unlawful for any person knowingly or intentionally to possess” either of those controlled dangerous substances. See La. R.S. 40:969(C) and La. R.S. 40:967(C), respectively. Accordingly, the district court correctly denied defendant's request to instruct the jury that the State had to prove that Mr. Ross "knowingly and intentionally” possessed those substances.

. The Louisiana Supreme Court set forth the harmless error analysis for confrontation errors in the Broadway case as follows:
The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. Id. Delaware v. Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Factors to be considered by the reviewing court include "the importance of the witness’ testimony in the prosecution’s case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contracting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.” Id. at 684, 106 S.Ct. 1431; State v. Witte, 559 So.2d at 1332. The verdict may stand if the reviewing court determines that the guilty verdict rendered in the particular trial is surely unat *770 tributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
Broadway, 96-2659 at p. 24, 753 So.2d at 817.

. As this court has noted, COMSTAT refers to "a process to inform patrol officers of what is expected of them and to measure progress in the NOPD’s application of a crime-fighting methodology, being a performance management approach to governing the NOPD. It apparently involves patrol officers meeting with supervisors to discuss how the police force should operate and what the appointing authority expects of and from them." Jones v. Department of Police, 11-0571, p. 3, n. 2 (La.App. 4 Cir. 8/24/11), 72 So.3d 467, 470.

. His two-part argument is as follows: (a) the State failed to prove his identity as the individual who pleaded guilty to possession of cocaine in case #492-611 from the Criminal District Court for the Parish of Orleans; and (b) that the district court erred in preventing his defense counsel from fully cross examining NOPD Officer Joseph Pollard, the sole witness to testify at the habitual offender hearing.

. The trial court stipulated that each thirty-year habitual offender sentence was to be served without the benefit of parole, probation, or suspension of sentence. The Habitual Offender Law, specifically, La. R.S. 15:529.1(G), states that any sentence imposed under that law shall be at hard labor without benefit of probation or suspension of sentence. It does not restrict parole in any way, nor do either of the statutes prohibiting the possession of carisoprodol or cocaine, La. R.S. 40:969(0(2) or La. R.S. 40:967(0(2), respectively. Although La. R.S. 15:574.4(A)(1), relative to parole eligibility, states that "[a] person convicted of a third or subsequent felony offense shall not be eligible for parole,” that statute is not part of the Habitual Offender Law, but is contained in Title 15, Chapter 5, covering the laws applicable to reprieve, pardon, and parole generally. See State v. Lewis, 30,536, p. 3 (La.App. 2 Cir. 4/8/98), 711 So.2d 383, 386 ("Defendant's ineligibility for parole arises from his status as a third-felony offender [under La. R.S. 15:574.4(A)(1) ] and not as a mandatory portion of the sentence to be imposed under the statute of conviction."). Given our decision to reverse Mr. Ross' convictions and sentences on counts two and three, it is unnecessary for us to amend the sentences to delete their respective restrictions on parole.